## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11, Subchapter V |
|  | ) |  |
| ESSENTIAL MINERALS, LLC,[1] | ) | Case No. 25-10430 (TMH) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### MOTION OF DEBTOR-IN-POSSESSION FOR INTERIM
### AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR-IN-POSSESSION
### TO USE CASH COLLATERAL AND GRANTING RELATED RELIEF

Essential Minerals, LLC, as debtor and debtor-in-possession (the "**Debtor**"),by and through its proposed undersigned counsel, hereby move (the "**Motion**") the Court for entry of interim and final Orders, pursuant to sections 105, 361 and 363 of title 11 of the U.S. Code (the "**Bankruptcy Code**") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to use cash collateral to fund the Debtor's post-petition business operations as set forth below:  (a) authorizing the Debtor to use the cash collateral of its secured creditors; (b) providing adequate protection to its secured lenders, for the use of its cash collateral, as set forth more fully herein; and (c) scheduling a final hearing ("**Final Hearing**") with respect to each of the foregoing matters. In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these proceedings and the Motion is proper under 28 U.S.C. § 1408.

---

[1] The last four digits of the Debtor's federal tax identification number are 6289. The Debtor's address is 901 Lambson Ln, Suite A/B, New Castle, DE 19720.

2.      The statutory bases for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

## BACKGROUND

3.      On the date hereof (the "**Petition Date**"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). Debtor is operating its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has yet been appointed in this Chapter 11 Case.

4.      In support of this Motion, Debtor relies on the Declaration of Stanley Mastil in support of First Day Relief (the "**First Day Declaration**").

A.      **Business History**

5.      The Debtor is headquartered in New Castle, Delaware and its primary business crafting, manufacturing, and refining naturally pure minerals, including calcium carbonate, calcium oxide, and calcium hydroxide, for the food and pharmaceutical sectors.

B.      **Debt Structure**

6.      According to the Debtor's books and records, the outstanding non-insider secured debt is approximately $1,612,000.[2]  Other secured claims are related to certain equipment of the Debtor's which are in repayment and are current.

## NEED FOR USE OF POST-PETITION CASH COLLATERAL

7.      The Debtor's goal in this case is to restart its operations in order to generate positive cash flow.  In so doing, with respect to its secured creditors, the Debtor expects to either effectuate a satisfaction of the existing debt, or a refinancing of the existing loans in connection with restarting the Debtor's operations and moving forward as a going concern.

---

[2] This amount includes certain disputed, contingent, and unliquidated claims in order to illustrate the adequacy of the equity cushion available and in no way is a concession by the Debtor that those claims are undisputed or valid.

8.     The Debtor has an immediate need as well as a continuing need for use of assets that may constitute certain secured creditors' cash collateral (the "**Cash Collateral**")[3] to pay the expenses of operating its business including, without limitation, salaries, administrative and leasing costs, utilities, services, repairs, maintenance and insurance costs in its capacity as debtor-in-possession.  Specifically, without use of post-petition Cash Collateral, the Debtor cannot pay wages, salaries, rents, utilities and other expenses associated with operating its business, and administrative expenses of this case.

9.     The availability of the use of Cash Collateral will provide the Debtor with more than just the necessary cash it needs to operate its business.  Of almost equal importance is the sense of confidence that such use of post-petition Cash Collateral will instill in the Debtor's suppliers, customers and employees.  The failure of the Debtor's suppliers and employees to cooperate with the Debtor at this time, and the potential attendant loss of customers and sales, could irreparably harm the Debtor's hopes of successfully restructuring its business as a going concern, which Debtor believes in the best interests of all of its stakeholders.

10.     In sum, without immediate use of post-petition Cash Collateral, the Debtor will continue to suffer the acute liquidity crisis that existed pre-petition and that threatens the Debtor's ability to maintain its operations in the short term.  The ability of the Debtor to remain a viable entity and restructure under chapter 11 of the Bankruptcy Code is dependent upon the Debtor obtaining the interim and final relief requested in this Motion.

11.     The Debtor believes that, to the extent secured creditors hold valid, perfected liens in all of the Debtor's assets, the secured creditors have an ample equity cushion.  The Debtor believes its property, accounts receivable, and equipment have a value in excess of $5,980,000. Considering that the Debtor's books demonstrate that non-insider secured creditors' debts are less

---

[3] As noted below, the equity cushion far exceeds all secured claims, including the disputed, liquidated, and contingent claims.  As such, all properly perfected secured parties are likewise adequately protected.

than $1,612,000, the Debtor believes that even considered conservatively, the secured creditors have a significant equity cushion of at least $4,300,000 dollars with respect to any valid lien. As further demonstrated by the Budget attached hereto as <u>Exhibit A</u> (the "**Budget**"), the value of the secured creditors' alleged collateral is not expected to decrease substantially so as to risk the diminution of the Debtor's asset value to anywhere near the debt level.

12.     According to the Third Circuit Court of Appeals, "in determining whether a secured creditor's interest is adequately protected, most courts engage in an analysis of the property's 'equity cushion'—the value of the property after deducting the claim of the creditor seeking relief from the automatic stay and all senior claims," while ignoring junior liens. *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995). Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. *See, e.g., In re Aventine Inc.*, Case No. 09-11214 (KG), Hr'g Tr. at 244:15-24 (Bankr. D. Del. April 14, 2009) (approving contested use of cash collateral and prime debtor-in-possession financing based, in part, on existence of "a very sufficient equity cushion"); *In re May*, 169 B.R. 462, 472 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral); *In re Southwest Assocs.*, 140 B.R. 360, 66 (Bankr. S.D.N.Y. 1992) (same); *In re Dynaco Corp.*, 162 B.R. 389,394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining).

13.     Indeed, an equity cushion alone can constitute sufficient adequate protection. *In re Fortune Smooth (U.S.) Ltd.*, 1993 WL 261478, *6 (Bankr. S.D.N.Y. July 6, 1993). "An equity cushion . . . provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case." *In re Elmira Litho, Inc.*, 174 B.R. 892, 904 (Bankr. S.D.N.Y. 1994). Case law indicates an equity cushion of

20% or more is independently sufficient to provide adequate protection. *See, e.g., In re C.B.G. Ltd.*, 150 B.R. 570, 573 (Bankr. M.D. Pa. 1992) (noting that an equity cushion of 20% or more constitutes adequate protection, less than 11% is insufficient, and a range of 12% to 20% has divided courts); *see also In re Utah 700, L.L.C.*, 2008 WL 2654919, at *5-6 (Bankr. D. Utah July 3, 2008) (finding approximate 23% equity cushion in the debtor's assets which were primarily real property was substantial and provided significant protection to the prepetition lenders); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 310 (Bankr. E.D. Pa. 1998) (concluding that 20% equity cushion was sufficient to establish adequate protection under section 362(d)(1)). Even if the debtor's business operations are performing poorly, a bankruptcy court may grant use of cash collateral on an interim basis if a significant equity cushion exists. *In re Pawtuxet Valley Prescription & Surgical Ctr., Inc.*, 2008 WL 1990887, at *5 (Bankr. D.R.I. Mar. 10, 2008) (permitting continued use of cash collateral, where debtor had not met any of its projections and management had made a series of poor business decisions, because the creditor continued to maintain a significant equity cushion).

14.    Further, to the extent not automatically provided by Section 552(b)(1) of the Bankruptcy Code, the Debtor proposes to provide the secured creditors with replacement liens in post-petition assets acquired using Cash Collateral of the secured creditors to the same extent and priority as existed pre-petition (the "**Replacement Liens**").

## BASIS FOR RELIEF REQUESTED

15.    The Debtor, pursuant to section 363(c)(2) of the Bankruptcy Code, hereby requests authority, immediately and on an ongoing basis, to use Cash Collateral and cash proceeds from the collection of any accounts receivable, to pay the expenses of operating its business and other administrative expenses during the pendency of this case.

16.    The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part:

If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the [debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

17.     Section 363(c)(2) permits the debtor in possession to use, sell or lease cash collateral only if either (i) each entity that has an interest in such cash collateral consents; or (ii) the court, after notice and hearing, authorizes such use, sale or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c)(2).  If the secured creditor does not consent to the use of its cash collateral, the Court can authorize the debtor to use such cash collateral under section 363(c)(2)(B) if the court determines that the debtors has provided "adequate protection" of the secured creditors' interests.  11 U.S.C. § 363(e).  To the extent LENDER does not consent to use of Cash Collateral, the Debtor submits that LENDER is adequately protected by the equity cushion.

18.     Unless the Debtor obtains approval of its Motion for continuing Court authorization to use Cash Collateral pursuant to section 363 of the Bankruptcy Code for the purposes requested, the Debtor and its assets will suffer immediate, continuing and irreparable harm.

19.     Pending the final hearing, the Debtor requires immediate interim use of Cash Collateral for, among other things, the purchase of supplies for its operations, the funding of payroll obligations, the funding of on-going business operations and other working capital needs. Absent immediate use of cash collateral for its continuing business operations, the Debtor will be unable to pay essential operating expenses and purchase supplies, and therefore, may be unable to continue to conduct its business pending the final hearing on the relief requested herein.

20.     The Debtor's proposed interim Order (the "**Interim Cash Collateral Order**") in connection with this Motion is attached hereto as Exhibit B.

**NOTICE**

Notice of this Motion has been given to the following parties: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's 20 largest unsecured creditors; (c) the Banks; (d) the Debtor's secured creditors; (e) those persons who have formally appeared in this chapter 11 case and requested service pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court:

A.      Conduct an emergency hearing on this Motion in accordance with sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014;

B.      Determine that the Debtor has given adequate notice of the Motion for interim use of Cash Collateral;

C.      Enter the Interim Cash Collateral Order approving the use of Cash Collateral as set forth herein on an interim basis for cause shown;

D.      Authorize the Debtor, immediately and on an ongoing basis until the hearing date set for Final use of cash collateral, to use any and all of the cash proceeds Cash Collateral to pay the ordinary expenses of operating its business and to fund the administrative expenses of this case in accordance with the Budget attached hereto as Exhibit A;

E.      Set this Motion for a final hearing upon due notice, in accordance with sections 105, 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014; and

F.      Grant such other and further relief as the Court deems just and proper.

Dated: March 11, 2025
     Wilmington, Delaware

**GELLERT SEITZ BUSENKELL & BROWN, LLC**

*/s/ Michael Van Gorder*
Michael Busenkell (DE 3933)
Ronald S. Gellert (DE 4259)
Michael Van Gorder (DE 6214)
1201 N. Orange St., Suite 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile:  (302) 425-5814
Email: rgellert@gsbblaw.com

*Proposed Attorneys for Essential Minerals, LLC.*

**<u>EXHIBIT A</u>**

**INTERIM BUDGET**

**Essential Minerals, LLC**

**13 Week Budget - 3/10/25 - 6/6/25**

| | 14-Mar WEEK 1 | 21-Mar WEEK 2 | 28-Mar WEEK 3 | 4-Apr WEEK 4 | 11-Apr WEEK 5 | 18-Apr WEEK 6 | 25-Apr WEEK 7 | 2-May WEEK 8 | 9-May WEEK 9 | 16-May WEEK 10 | 23-May WEEK 11 | 30-May WEEK 12 | 6-Jun WEEK 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OPERATIONS** | | | | | | | | | | | | | | |
| **Receipts** | | | | | | | | | | | | | | |
| Cash Receipts Operations | 147,035 | 22,945 | 67,800 | 51,661 | - | 112,000 | 128,000 | 128,000 | 128,000 | 141,140 | 128,000 | 128,000 | 128,000 | 1,310,581 |
| Cash Receipts Insurance Claim | - | 215,000 | 203,000 | 280,000 | 200,000 | - | - | 202,000 | - | - | - | 100,000 | - | 1,200,000 |
| Total Cash Receipts | 147,035 | 237,945 | 270,800 | 331,661 | 200,000 | 112,000 | 128,000 | 330,000 | 128,000 | 141,140 | 128,000 | 228,000 | 128,000 | 2,510,581 |
| **Disbursements** | | | | | | | | | | | | | | |
| Payroll and payroll related | 76,000 | 73,000 | 57,000 | 5,984 | 57,000 | - | 57,000 | - | 57,000 | 5,984 | 57,000 | - | 57,000 | 502,968 |
| Materials - Raw Ore | 50,000 | 50,000 | 75,000 | 75,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 750,000 |
| Critical Vendors | - | 100,000 | - | 280,000 | - | - | - | - | - | - | - | - | - | 380,000 |
| Equipment | - | 9,000 | - | - | 1,356 | 9,000 | - | - | 1,356 | 9,000 | - | - | 1,356 | 31,068 |
| Supplies | 4,600 | 4,600 | 3,000 | 3,000 | 3,500 | 4,600 | 3,000 | 3,000 | 3,500 | 4,600 | 3,000 | 3,000 | 3,500 | 46,900 |
| Rent | - | - | - | 45,062 | - | - | - | 15,000 | - | 15,000 | - | - | 60,062 | 180,186 |
| Utilities | - | 1,985 | - | - | - | 1,985 | - | - | - | 1,985 | - | - | 1,985 | 7,940 |
| Insurance Property/Liability | - | 7,000 | - | - | 7,000 | - | - | - | 7,000 | - | - | - | 7,000 | 28,000 |
| Software | - | - | - | 20,000 | - | - | - | - | - | - | - | - | - | 20,000 |
| Office Expenses | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,250 |
| Miscellaneous | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 32,500 |
| Total Disbursements | 133,350 | 248,335 | 137,750 | 431,796 | 146,606 | 108,335 | 112,750 | 100,812 | 121,606 | 89,319 | 112,750 | 55,750 | 183,653 | 1,982,812 |
| Net cash from operations | 13,685 | (10,390) | 133,050 | (100,135) | 53,394 | 3,665 | 15,250 | 229,188 | 6,394 | 51,821 | 15,250 | 172,250 | (55,653) | 527,769 |
| **Restructuring Costs** | | | | | | | | | | | | | | |
| Attorney fees | - | - | - | - | - | - | - | - | 50,000 | - | - | - | 25,000 | 75,000 |
| Restructuring Manager | 20,000 | - | - | - | - | - | - | - | 50,000 | - | - | - | 25,000 | 95,000 |
| SubChapterV Trustee Fees | - | - | - | - | - | - | - | - | - | - | - | - | 15,000 | 15,000 |
| Restructuring Costs | 20,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100,000 | 0 | 0 | 0 | 65,000 | 185,000 |
| **NET INCREASE (DECREASE) IN CASH** | (6,315) | (10,390) | 133,050 | (100,135) | 53,394 | 3,665 | 15,250 | 229,188 | (93,606) | 51,821 | 15,250 | 172,250 | (120,653) | 342,769 |
| **BEGINNING CASH BALANCE** | 28,638 | 22,323 | 11,933 | 144,983 | 44,848 | 98,242 | 101,907 | 117,157 | 346,345 | 252,739 | 304,560 | 319,810 | 492,060 | |
| **ENDING CASH BALANCE** | $ 22,323 | $ 11,933 | $ 144,983 | $ 44,848 | $ 98,242 | $ 101,907 | $ 117,157 | $ 346,345 | $ 252,739 | $ 304,560 | $ 319,810 | $ 492,060 | $ 371,407 | |

## **EXHIBIT B**

### **INTERIM CASH COLLATERAL ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| ESSENTIAL MINERALS, LLC,[1] | Case No. 25-10430 (TMH) |
| Debtor. | |

## INTERIM ORDER AUTHORIZING THE DEBTOR-IN-POSSESSION
## TO USE CASH COLLATERAL AND GRANTING RELATED RELIEF

Upon review of the motion (the "**Motion**")[2] of Essential Minerals, LLC (the "**Debtor**"), debtor and debtor-in-possession in the above-captioned case, for entry of an order, pursuant to sections 105, 361 and 363 of title 11 of the U.S. Code (the "**Bankruptcy Code**") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtor to use cash collateral to fund the Debtor's post-petition business operations; and it appearing that no other or further notice need be provided; and upon the record therein, including, without limitation, the First Day Declaration; and it appearing that the relief requested by the Motion is in the best interest of the Debtor's estates, their creditors and other parties in interest, and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED, on an interim basis, as set forth herein.

2.      The secured creditors are hereby ordered to release any hold or freeze on any funds in the Debtor's bank accounts, and to provide the Debtor with access to such funds.

---

[1] The last four digits of the Debtor's federal tax identification number are 6289. The Debtor's address is 901 Lambson Ln, Suite A/B, New Castle, DE 19720.

[2] Capitalized terms used but not otherwise defined shall have the meanings set forth in the Motion.

3.      The Debtor is permitted to use Cash Collateral in accordance with the budget attached to this Order as Exhibit A (the "**Interim Budget**") provided, however, the Debtor may exceed the disbursements set forth in the Interim Budget up to an amount of ten percent (10%) in the aggregate, without further order of this Court.

4.      The secured creditors are granted, as assurance of adequate protection, replacement liens in post-petition assets acquired using the Cash Collateral to the same extent and priority as existed pre-petition.

5.      Upon the record presented to the Court at the Interim Hearing held on March 14, 2025 and under the exigent circumstances set forth therein, requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rules 4001(b) and 4001(c)(l) to (a) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) the Debtor's secured creditors; (e) PNC Bank, N.A.; (f) Citizens Bank, N.A.; (g) Chase Bank, N.A.; and (h) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002, and the entry of the Interim Order; and no further notice of, or hearing on, the entry of this Interim Order is necessary or required.  Rule 6003(b) of the Federal Rules of Bankruptcy Procedure has been satisfied.

6.      Notwithstanding any applicability of Federal Rule of Bankruptcy Procedure 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

7.      The Debtor is authorized to take such actions as may be necessary and appropriate to implement the terms of this Order.

8.    This Court shall retain jurisdiction to hear and consider all disputes arising from the interpretation or implementation of this Order.

9.    Any objection to the granting of the relief requested by the Motion on a final basis shall be filed with the Court and served on or before **_____, 2025** by **4:00 p.m.** Eastern Time (the "**Objection Deadline**") upon: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for Debtors, Gellert Seitz Busenkell & Brown, LLC, 1201 N. Orange St., 3rd Floor, Wilmington, Delaware 19801 (attn.: Michael Busenkell); and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

10.    A final hearing on the Motion (the "**Final Hearing**") will be held on **_____, 2025** at _____ **.m.** (ET).